## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

ANDREW CRAMER, KIM GRADEN, JEANNINE DONIGAN, BRITTANY WALKER, ANITA REDFERN, SCOTT SAKALL, BRIDGETT WILLIAMS-COOPER, LATOYA LATSON, and SASHA TERAN,

        **Plaintiffs,**

v.                                   Case No: 6:20-cv-1808-RBD-EJK

FAVORITE HEALTHCARE STAFFING, INC.,

        **Defendant.**

### REPORT AND RECOMMENDATION

This cause comes before the Court on the parties' Amended Joint Motion for Approval of Settlement Agreement (the "Motion"), filed March 21, 2023. (Doc. 91.) Upon consideration, I respectfully recommend that the Motion be granted.

### I.  BACKGROUND

On October 2, 2022, Defendant, Favorite Healthcare Staffing, Inc., removed this action to this Court from the Ninth Judicial Circuit in and for Orange County, Florida. (Doc. 1.) Plaintiffs alleged unpaid overtime claims in violation of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–219, and Florida's common law. (Doc. 1-7.)

Plaintiffs were employed by Defendant as registered nurses at Defendant's COVID-19 testing site located at the Orange County Convention Center. (*Id.* ¶ 6.) Plaintiffs began work on or about March 20, 2020, until various dates between April 7, 2020, and August 21, 2020. (*Id.* ¶ 7.) Plaintiffs allege they were required to work in excess of 40 hours per week and that Defendant failed to pay Plaintiffs for all hours worked in excess of 40 hours, as required by the FLSA. (*Id.* ¶ 20.)

After removal, Plaintiffs and Defendant negotiated a compromise and settlement of Plaintiffs' claims and filed an initial motion for approval of their settlement agreement. (Doc. 86.) On March 7, 2023, the undersigned denied the motion without prejudice due to deficiencies in the settlement agreement. (Doc. 90.) On March 21, 2023, the parties filed the instant amended Motion, pursuant to *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354–55 (11th Cir. 1982). (Doc. 91.)

Plaintiff Teran and Defendant reached a settlement for $42,198.67, including payment for unpaid overtime compensation, liquidated damages, consideration for a general release of claims and a nondisparagement provision, and attorneys' fees and costs. (Doc. 91-1.) The remaining Plaintiffs subsequently reached an agreement with Defendant for varying amounts, but their agreements do not contain a non-disparagement provision. (Docs. 91-2–91-9.) When appropriate, the undersigned will address the agreements for Plaintiff Teran and the remaining Plaintiffs separately.

## II.  STANDARD

"The principal congressional purpose in enacting the Fair Labor Standards Act of 1938 was to protect all covered workers from substandard wages and oppressive

working hours, 'labor conditions [that are] detrimental to the maintenance of the minimum standard of living necessary for health, efficiency and general well-being of workers.'" *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981) (alteration in original) (quoting 29 U.S.C. § 202(a)). "Any employer who violates the provisions of section 206 or section 207 of [the FLSA] shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, . . . and in an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). Section 206 establishes the federally mandated minimum hourly wage, and § 207 prescribes overtime compensation of "one and one-half times the regular rate" for each hour worked in excess of forty hours during a given workweek. The provisions of the FLSA are mandatory and "cannot be abridged by contract or otherwise waived." *Barrentine*, 450 U.S. at 740. To permit otherwise would "'nullify the purposes' of the [FLSA] and thwart the legislative policies it was designed to effectuate." *Id.* (quoting *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 707 (1945)).

The parties seek judicial review and a determination that their settlement is a "fair and reasonable resolution of a bona fide dispute" over FLSA issues. *See Lynn's Food Stores*, 679 F.2d at 1354–55. If a settlement is not supervised by the Department of Labor, the only other route for a compromise of FLSA claims is provided in the context of suits brought directly by employees against their employers under § 216(b) to recover back wages for FLSA violations. *Id.* at 1353. "When employees bring a private action for back wages under the FLSA, and present to the district court a

proposed settlement, the district court may enter a stipulated judgment after scrutinizing the settlement for fairness." *Id.*

The Eleventh Circuit has held that "[s]ettlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Id.* at 1354. In adversarial cases:

> The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.*

When evaluating an FLSA settlement agreement, the district court considers whether the settlement is fair and reasonable to the employee, or "internal" factors, and whether the settlement frustrates the purpose of the FLSA, or "external" factors. *Dees v. Hydradry, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010); *Moreno v. Regions Bank*, 729 F. Supp. 2d 1346, 1350–51 (M.D. Fla. 2010). Factors considered "internal" include: "(1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs'

success on the merits; (5) the range of possible recovery; and (6) the opinions of the counsel." *Hamilton v. Frito-Lay, Inc.*, No. 6:05-CV-592-ORL-22JGG, 2007 WL 328792, at *2 (M.D. Fla. Jan. 8, 2007). There is a "'strong presumption' in favor of finding a settlement fair." *Id.* (quoting *Cotton v. Hinton*, 559 F.2d 1336, 1331 (5th Cir. 1977)).[1]

### III. DISCUSSION

#### A. Settlement Sums

The Settlement Agreements indicate that Defendant has agreed to pay Plaintiffs the following unpaid wages for work during the relevant time periods:

- Plaintiff Teran - $14,000 in unpaid wages; $14,000 in liquidated damages, for a total of **$28,000**.

- Plaintiff Cramer - $5,000 in unpaid wages; $5,000 in liquidated damages, for a total of **$10,000**.

- Plaintiff Redfern - $5,000 in unpaid wages; $5,000 in liquidated damages, for a total of **$10,000**.

- Plaintiff Sakall - $5,000 in unpaid wages; $5,000 in liquidated damages, for a total of **$10,000**.

- Plaintiff Williams-Cooper - $5,000 in unpaid wages; $5,000 in liquidated damages, for a total of **$10,000**.

- Plaintiff Walker - $4,500 in unpaid wages; $4,500 in liquidated damages, for a

---

[1] *See Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding all decisions from the Fifth Circuit handed down prior to October 1, 1981, are binding on the Eleventh Circuit).

  total of **$9,000**.

- Plaintiff Donigan - $3,000 in unpaid wages; $3,000 in liquidated damages, for a total of **$6,000**.

- Plaintiff Graden - $3,000 in unpaid wages; $3,000 in liquidated damages, for a total of **$6,000**.

- Plaintiff Latson - $3,000 in unpaid wages; $3,000 in liquidated damages, for a total of **$6,000**.

(Docs. 91 at 6–7; 91-1–9.)

In their answers to the Court's interrogatories, Plaintiffs claimed they were entitled to more wages than they will receive in the settlements, set forth as follows:

- Plaintiff Teran - $338,972.22
- Plaintiff Cramer - $95,240.77
- Plaintiff Redfern - $137,096.15
- Plaintiff Sakall - $323,272.59
- Plaintiff Williams-Cooper - $337,364.51
- Plaintiff Walker - $97,331.33
- Plaintiff Donigan - $96,888.37
- Plaintiff Graden - $97,177.65
- Plaintiff Latson - $39,718.04

(Docs. 13–15, 19, 22–25, 39.)

Under 29 U.S.C. § 216(b), an employee damaged by a violation of the FLSA is entitled to unpaid minimum wages or unpaid overtime compensation, plus an additional, equal amount, as liquidated damages. On review, I find that the settlement sums the parties have agreed to accept in satisfaction of their claims to be fair and reasonable, considering that all parties are represented by counsel and wish to avoid the risk and further expense of litigation. Thus, I find that the settlement sum represents a fair resolution of a *bona fide* dispute between the parties and that Plaintiffs have not unfairly compromised their claims.

### B. Attorney Fees

The Motion further indicates that Defendant has agreed to pay Plaintiffs' attorneys the following fees and costs:

- Plaintiff Teran - **$12,198.67** in attorneys' fees and costs.

- Plaintiff Cramer - $6,500.00 in attorneys' fees; $1,437.50 in costs, for a total of **$7,937.50**.

- Plaintiff Redfern - $6,500.00 in attorneys' fees; $1,437.50 in costs, for a total of **$7,937.50**.

- Plaintiff Sakall - $6,500.00 in attorneys' fees; $1,437.50 in costs, for a total of **$7,937.50**.

- Plaintiff Williams-Cooper - $6,500.00 in attorneys' fees; $1,437.50 in costs, for a total of **$7,937.50**.

- Plaintiff Walker - $6,00.00 in attorneys' fees; $1,437.50 in costs, for a total of

**$7,437.50**.

- Plaintiff Donigan - $4,500.00 in attorneys' fees; $1,437.50 in costs, for a total of **$5,937.50**.

- Plaintiff Graden - $4,500.00 in attorneys' fees; $1,437.50 in costs, for a total of **$5,937.50**.

- Plaintiff Latson - $4,00.00 in attorneys' fees; $1,437.50 in costs, for a total of **$5,437.50**.

(Doc. 91 ¶¶ 15, 22.)

Pursuant to 29 U.S.C. § 216(b), "[t]he court [in an FLSA action] shall . . . allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." As the parties represent that these amounts were negotiated separately from the amount received by Plaintiffs, and the settlement is otherwise reasonable on its face, further review is not required. (Doc. 91 ¶¶ 15, 23); *Bonetti v. Embarq Mgmt. Co.*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009) (stating that if the parties "represent[] that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, . . . the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.")

### C. Additional Provisions

#### i. Plaintiff Teran

In return for additional, separate consideration, Plaintiff Teran has agreed to a non-disparagement clause (Doc. 91-1 ¶ 8) and the following release:

In exchange for, and in consideration of, the payments, benefits, and other commitments described above, TERAN knowingly and voluntarily releases and forever discharges, to the full extent permitted by law, FAVORITE HEALTHCARE STAFFING, INC., and its parent corporations, subsidiaries, affiliates, divisions, predecessors, successors and assigns, joint employers, joint ventures, and the current and former employees, officers, directors, owners, insurers, and agents thereof (all singularly and collectively referred to in this provision as the "Released Parties"), of and from any and all claims, known and unknown, accrued and unaccrued, asserted and unasserted, TERAN has or may have against the Released Parties as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

- Title VII of the Civil Rights Act of 1964, as amended;
- The Civil Rights Act of 1991;
- Sections 1981 through 1988 of Title 42 of the United States Code, as amended;
- The Employee Retirement Income Security Act of 1974, as amended;
- The Immigration Reform and Control Act, as amended;
- The Fair Labor Standards Act, as amended
- The Equal Pay Act, as amended;
- The Family and Medical Leave Act, as amended;
- The Age Discrimination in Employment Act; as amended
- The Americans with Disabilities Act, as amended;
- The Workers Adjustment and Retraining Notification Act, as amended;
- The Occupational Safety and Health Act, as amended;
- The Sarbanes-Oxley Act of 2002;
- The Florida Civil Rights Act – Fla. Stat. §760.01 et seq.;
- The Florida Workers' Compensation Retaliation Statute -- Fla. Stat. §440.205;
- The Florida Whistleblower Act – Fla. Stat. §448.101 et seq.;

- The Florida Minimum Wage Act and any other Florida wage payment laws;
- Fla. Stat. §448.08;
- Any other federal, state or local civil or human rights law or any other local, state or federal law, regulation or ordinance;
- Any public policy, contract, tort, or common law; and
- Any claim for costs, fees, or other expenses including attorneys' fees incurred in these matters.

The parties acknowledge that this Agreement shall not apply to rights or claims that may arise after the Effective Date. Additionally, nothing in this paragraph or this Agreement is intended to limit or restrict any rights that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Moreover, nothing in this Agreement (including, but not limited, to the release of claims, affirmations, no re-employment, and non-disparagement provisions): (a) limits or affects TERAN's right to challenge the validity of this Agreement under the ADEA or the OWBPA; (b) prevents TERAN from filing a charge or complaint with or from participating in an investigation or proceeding conducted by the EEOC, the National Labor Relations Board, the Securities and Exchange Commission, or any other federal, state or local agency charged with the enforcement of any laws, including providing documents or other information; or (c) prevents TERAN from exercising her rights under Section 7 of the NLRA to engage in protected, concerted activity with other employees, although by signing this Agreement TERAN is waiving her right to recover any individual relief (including backpay, frontpay, reinstatement or other legal or equitable relief) in any charge, complaint, or lawsuit or other proceeding brought by TERAN or on her behalf by any third party, except for any right she may have to receive a payment from a government agency (and not FAVORITE) for information provided to the government agency.

(*Id.* ¶ 4) (the "Release").

General releases in FLSA cases are frequently viewed as "a 'side deal' in which the employer extracts a gratuitous (although usually valueless) release of all claims in exchange for money unconditionally owed to the employee" and, therefore, such releases "confer[] an uncompensated, unevaluated, and unfair benefit on the employer." *Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted). As such, "[a] compromise of an FLSA claim that contains a pervasive release of unknown claims fails judicial scrutiny." *Id.* at 1352.

Nevertheless, courts in this District have approved such provisions where a plaintiff received adequate, additional consideration in exchange, even where plaintiffs comprised their FLSA claims. *Deslandes v. BAM-B Enterprises of Cent. Fla., Inc.*, No. 6:17-cv-1393-Orl-41TBS, 2018 WL 3352937, at *3 (M.D. Fla. June 28, 2018) (approving FLSA settlement where plaintiff compromised the FLSA claim and received $300 in separate consideration), *report and recommendation adopted*, No. 6:17-cv-1393-Orl-41TBS, 2018 WL 3344380 (M.D. Fla. July 9, 2018); *Cooley v. Real Prop. Specialists, Inc.*, No. 6:18-cv-752-Orl-41GJK, 2018 WL 5847423, at *4 (M.D. Fla. Oct. 4, 2018) (approving FLSA settlement where plaintiff compromised the FLSA claim and received $500 in separate consideration for a general release), *report and recommendation adopted*, No. 6:18-cv-752-Orl-41GJK, 2018 WL 5840508 (M.D. Fla. Nov. 8, 2018).

Here, Plaintiff Teran is receiving $2,000 as consideration for the non-disparagement clause and the Release. (Doc. 91 ¶ 15.) Additionally, the parties have indicated to the Court that Plaintiff Teran is not releasing any additional claims

pursuant to any separate agreement with Defendant. (Doc. 89.) This leads me to conclude that the separate consideration is adequate. *See Owens v. SSRMI, LLC*, No. 5:16-cv-15-Oc-PGB-PRL, 2017 WL 2190646, at *3 (M.D. Fla. Apr. 28, 2017), *report and recommendation adopted sub nom. Owens v. SSRM1, LLC*, 2017 WL 2172089 (M.D. Fla. May 17, 2017) (explaining that in order for a court to make an informed determination as to whether a general release affects the fairness and reasonableness of a settlement, an explanation regarding any other claims that a plaintiff is knowingly releasing and identification of any additional consideration given in exchange must be discussed). Therefore, I conclude that the Release does not "undermine the public policies embodied in the FLSA and other labor and employment laws." *Wilburn v. Paradise Lawns and Landscaping, Inc. et al*, 6:14-cv-1557-Orl-37TBS, 2015 WL 13793352, at *3 n.1 (M.D. Fla. Feb. 13, 2015) (citing *Dees*, 706 F. Supp. 2d at 1242), *report and recommendation adopted*, No. 6:14-cv-1557-Orl-37TBS, 2015 WL 13793264 (M.D. Fla. Feb. 19, 2015).

### ii. Remaining Plaintiffs

The remaining eight Plaintiffs have agreed to a release in substantially the same form, as follows:

> In exchange for, and in consideration of, the payments, benefits, and other commitments described above, [PLAINTIFF] knowingly and voluntarily releases and forever discharges, to the full extent permitted by law, FAVORITE HEALTHCARE STAFFING, INC., and Favorite Healthcare Staffing, LLC, ICS US Holdings, Inc., Acacium Group Limited, FHS Holdings, Inc., and Kompass Kapital Management, LLC (all singularly and collectively referred to in this provision as the "Released

Parties"), of and from any and all wage and hour claims, known and unknown, accrued and unaccrued, asserted and unasserted, [PLAINTIFF] has or may have against the Released Parties as of the date of execution of this Agreement, including, but not limited to, any alleged violation of:

- The Fair Labor Standards Act, as amended;
- The Florida Minimum Wage Act and any other Florida wage payment laws;
- Fla. Stat. §448.08;
- Any other federal, state or local regulation or ordinance relating to wages and/or compensation;
- Any public policy, contract, tort, or common law claims for wages and/or compensation; and
- Any claim for costs, fees, or other expenses including attorneys' fees incurred in these matters.

The parties acknowledge that this Agreement shall not apply to rights or claims that may arise after the Effective Date. Additionally, nothing in this paragraph or this Agreement is intended to limit or restrict any rights that cannot, by express and unequivocal terms of law, be limited, waived, or extinguished. Further, nothing in this paragraph or this Agreement is intended to limit or restrict [PLAINTIFF's] right to file a timely motion for reconsideration and/or appeal of the September 26, 2022 Order.

(Docs. 91-2, 91-3, 91-4, 91-5, 91-6, 91-7, 91-8, 91-9 ¶ 4) (the "remaining Plaintiffs' Release"). Unlike with Plaintiff Teran, the remaining Plaintiffs receive no additional compensation for their releases; however, their releases are limited to "wage and hour claims," as opposed to Plaintiff Teran's general release.

Judges in this District have found releases similar to the one presented here to pass judicial scrutiny because it does not require Plaintiffs to release unknown claims that are unrelated to their FLSA claims. *Pond v. Red Lambda, Inc.*, No. 6:19-cv-1975-

ORL-37EJK, 2020 WL 4808744, at *4 (M.D. Fla. Aug. 3, 2020) (recommending approval of release of "unpaid wage and hou[r] and/or related claims arising solely out of the same facts or circumstances related to those in the above-captioned action"), *report and recommendation adopted*, No. 6:19-cv-1975-ORL-37EJK, 2020 WL 4785449 (M.D. Fla. Aug. 18, 2020); *Batchelor v. Gen. Mar. Corp.*, No. 6:15-cv-2082-Orl-41KRS, 2016 WL 4467136, at *1 (M.D. Fla. Aug. 24, 2016) (approving release where it was "limited to wage claims."); *Monahan v. Rehoboth Hosp., Inc.*, 6:15-cv-1159-Orl-40KRS, 2015 WL 9258244, at *2 (M.D. Fla. Dec. 18, 2015) ("The undersigned sides with those decisions holding that a release in an FLSA settlement is generally reasonable so long as it is narrowly-tailored to the wage claims asserted in the complaint."). Therefore, because the remaining Plaintiffs' Release provision releases only FLSA claims against Defendant and does not seek to release other non-related claims against unnamed parties, I recommend that the Court find that this Release passes judicial scrutiny. *See Moreno*, 729 F. Supp. 2d at 1351–52 (footnote omitted).

## IV. RECOMMENDATION

Upon consideration of the foregoing, I **RESPECTFULLY RECOMMEND** that the Court:

1. **GRANT** the parties' Amended Joint Motion for Approval of Settlement Agreement (Doc. 91);

2. **FIND** that the parties' Settlement Agreements are a fair and reasonable resolution of a *bona fide* dispute under the FLSA;

3. **DISMISS** the Complaint (Doc. 1) **WITH PREJUDICE**; and

4. **DIRECT** the Clerk of Court to close the file.

## NOTICE TO PARTIES

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

**If the parties do not object to this Report and Recommendation, then they may expedite the approval process by filing notices of no objection.**

Recommended in Orlando, Florida on April 14, 2023.

_____
EMBRY J. KIDD
UNITED STATES MAGISTRATE JUDGE